IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ROXANNE BUZHARDT, ) | Civil Action No. 3:06-848-HFF-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

Plaintiff applied for SSI on May 3, 2002, and DIB on May 13, 2002. Plaintiff's applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held November 17, 2004, at which Plaintiff appeared and testified, the ALJ issued a decision dated August 31, 2005, denying benefits. The ALJ found that Plaintiff was not disabled because she was able to perform her past relevant work as a doffer, a cashier/stocker, and a machine operator.

Plaintiff was thirty-nine years old at the time she alleges she became disabled and forty-three years old at the time of the ALJ's decision. She has a tenth grade education and past relevant work as a doffer, cashier/stocker, and machine operator. Plaintiff alleges disability since November 1,

2001, due to low back problems, arthritis of both legs, diabetes mellitus, and side-effects of medications.

The ALJ found (Tr. 19-20):

1. THE CLAIMANT MEETS THE NONDISABILITY REQUIREMENTS FOR A PERIOD OF DISABILITY AND DISABILITY INSURANCE BENEFITS SET FORTH IN SECTION 216(I) OF THE SOCIAL SECURITY ACT AND IS INSURED FOR BENEFITS THROUGH DECEMBER 31, 2005.

2. THE CLAIMANT HAS NOT ENGAGED IN SUBSTANTIAL GAINFUL ACTIVITY SINCE THE ALLEGED ONSET OF DISABILITY.

3. THE CLAIMANT'S OSTEOARTHRITIS AND DEGENERATIVE DISC DISEASE OF THE LUMBAR SPINE ARE CONSIDERED "SEVERE" BASED ON THE REQUIREMENTS IN THE REGULATIONS 20 CFR §§ 404.1520(C) AND 416.920(B).

4. THIS MEDICALLY DETERMINABLE IMPAIRMENTS DO NOT MEET OR MEDICALLY EQUAL ONE OF THE LISTED IMPAIRMENTS IN APPENDIX 1, SUBPART P, REGULATIONS NO. 4.

5. THE UNDERSIGNED FINDS THE CLAIMANT'S ALLEGATIONS REGARDING HER LIMITATIONS ARE NOT TOTALLY CREDIBLE FOR THE REASONS SET FORTH IN THE BODY OF THE DECISION.

6. THE CLAIMANT RETAINS THE RESIDUAL FUNCTIONAL CAPACITY TO PERFORM A WIDE RANGE OF MEDIUM WORK WITH THE FOLLOWING RESTRICTIONS: OCCASIONALLY LIFTING 50 POUNDS, FREQUENTLY LIFTING 25 POUNDS, STANDING, WALKING AND/OR SITTING ABOUT 6 HOURS IN AN 8-HOUR WORKDAY, OCCASIONALLY CLIMBING, STOOPING, KNEELING, CROUCHING, AND CRAWLING, FREQUENTLY BALANCING, AND NO MANIPULATIVE, VISUAL, COMMUNICATIVE, OR ENVIRONMENTAL LIMITATIONS.

7. THE CLAIMANT'S PAST RELEVANT WORK AS A DOFFER, CASHIER/STOCKER, AND MACHINE OPERATOR DID NOT

>     REQUIRE THE PERFORMANCE OF WORK-RELATED ACTIVITIES PRECLUDED BY HER RESIDUAL FUNCTIONAL CAPACITY (20 CFR §§ 404.1565 AND 416.965).
>
> 8.  THE CLAIMANT'S MEDICALLY DETERMINABLE OSTEOARTHRITIS AND DEGENERATIVE DISC DISEASE OF THE LUMBAR SPINE DO NOT PREVENT THE CLAIMANT FROM PERFORMING HER PAST RELEVANT WORK AS SHE PERFORMED IT.
>
> 9.  THE CLAIMANT WAS NOT UNDER A "DISABILITY" AS DEFINED IN THE SOCIAL SECURITY ACT, AT ANY TIME THROUGH THE DATE OF THE DECISION.

On January 17, 2006, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on March 13, 2006.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

**DISCUSSION**

Plaintiff appears to allege that: (1) the ALJ's decision is not supported by substantial evidence; (2) the ALJ erred in rejecting the opinion of Plaintiff's treating physician, (3) the ALJ erred in evaluating Plaintiff's pain and credibility, and (4) that the ALJ erred in not obtaining testimony from a vocational expert ("VE") to determine that she can perform her past relevant work. The Commissioner contends that the ALJ's decision is supported by substantial evidence.

    A.     Substantial Evidence

Plaintiff appears to allege that the ALJ's decision is not supported by substantial evidence. In particular, she alleges that the ALJ failed to properly consider her depression and anxiety. The Commissioner contends that the ALJ's decision is supported by substantial evidence. Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

The ALJ's determination that Plaintiff could perform a wide range of medium work despite her impairments is supported by substantial evidence. The ALJ found that Plaintiff had the severe impairments of osteoarthritis and degenerative disc disease of the spine.

Dr. Bret J. Warner, a neurologist, treated Plaintiff for complaints of back and leg pain, beginning on January 21, 2002. Tr. 222-231. There is no indication that Dr. Warner placed any restrictions on Plaintiff's ability to perform work activities or that he opined that she was disabled

from her impairments.  See Lee v. Sullivan, 945 F.2d 687, 693 (4th Cir. 1991)(finding that no physician opined that claimant was totally and permanently disabled supported a finding of no disability); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)(treating physician's opinion entitled to great weight).

Dr. Warner noted that an MRI on January 17, 2002, revealed a bulging disc at L4/5 and L5/S1 without evidence of foraminal narrowing.  Additionally, Dr. Warner noted that Plaintiff might have some disc material in the lateral recess at L3/4 which might be causing encroachment of the nerve root.  His examination, however, revealed that Plaintiff had normal strength, muscle bulk, and tone; no upper extremity drift or extraneous movements; normal coordination and sensation; equal and active deep tendon reflexes; normal gait; and negative Romberg sign.  Dr. Warner concluded that Plaintiff had a "non-focal examination" and that the MRI scan abnormalities at L5/S1 and L4/5 were not "causing her any problems."  He prescribed medications, instructed her to perform low back exercises, and scheduled nerve conduction studies.  Tr. 223.  Nerve studies, performed on January 24, 2002, revealed mild left lumbosacral radiculopathy.  Tr. 224-225.

On March 7, 2002, Plaintiff told Dr. Warner that her previously prescribed medication had not made much difference in her back problems.  Examination again was "non-focal."  Dr. Warner prescribed Elavil and Topamax for Plaintiff's low back pain.  Tr. 221.  On June 18, 2002, Plaintiff complained of an exacerbation of her low back pain after she babysat and cut grass over the weekend. Dr. Warner's noted that Plaintiff had good reflexes, good sensation, and good motor skill testing.  Dr. Warner prescribed Valium.  Tr. 220.  On September 16, 2002, Plaintiff complained that she had been experiencing low back pain for two days.  Examination revealed normal reflexes, strength, and sensation. Dr. Warner prescribed Valium to help as a muscle relaxant and Trilisate (a non-steroidal

5

anti-inflammatory medication). Tr. 219.  On October 23, 2002, Plaintiff complained of a two week exacerbation of low back pain.  Examination revealed normal deep tendon reflexes, sensation, and motor functioning.  Dr. Warner noted that Plaintiff's January 2002 MRI scan showed only "mild, minimal changes" and described her back pain as "benign."  Increased dosages of Elavil and Valium were prescribed.

On November 22, 2002, Plaintiff informed Dr. Warner that she was "a little bit better." Examination was normal.  Dr. Warner noted that Plaintiff had some stressors at home, and thought that depression and anxiety were contributing to her musculoskeletal pain complaints. He prescribed Ibuprofen.  On March 26, 2003, Plaintiff again complained of back pain.  Neurological examination revealed normal cranial nerves; normal strength, muscle bulk, and tone; intact sensation; equal and active deep tendon reflexes; normal coordination and gait; and negative Romberg.  Dr. Warner opined that Plaintiff's increased complaints were related to her recent problems with a heart catheterization likely aggravated by stress and anxiety.  He continued Valium and added Trazadone as an antidepressant and to help modify her pain.  On June 25, 2003, Dr. Warner noted that Plaintiff had normal cranial nerves; normal strength, muscle bulk, and muscle tone; no extraneous movements or drift in the upper extremities; intact sensation; equal and active deep tendon reflexes; normal coordination and gait; and negative Romberg.  Tr. 630.

Plaintiff also sought treatment at hospital emergency rooms on eleven occasions for back pain complaints from December 3, 2001 to May 24, 2004.  Tr. 260-265, 288-293, 302-307, 332-334, 344, 423-427, 435-439, 446-450, 476-482, 485-490, 493-498, and 529-534.   There is no indication that any of these examining physicians placed any permanent restrictions on Plaintiff's ability to perform work.

Dr. Richard M. Christian, Jr., an orthopedic surgeon, evaluated Plaintiff for complaints of left knee pain on August 13, 2001. She complained of "global discomfort, consistent with an arthritic pattern." Examination revealed no swelling and good range of motion. X-rays revealed "mild to moderate medial and lateral joint changes." Dr. Christian opined that Plaintiff had left knee osteoarthritis, and discussed knee injections to address her complaints. Tr. 372-373.

On April 9, 2002, Plaintiff complained to Dr. Christian of a two-week history of right knee pain. Although examination revealed pain at the extremes of range of motion and patellar compression, there was no effusion, redness or warmth. X-rays were consistent with mild tricompartmental osteoarthritis. Plaintiff refused Dr. Christian's offer of anti-inflammatory medication. Tr. 362-363. An MRI of Plaintiff's right knee on April 12, 2002 revealed mild medial compartment osteoarthritis and no evidence of internal derangement of her knee. Tr. 377, 524. Dr. Christian injected Plaintiff's right knee on April 23, 2002, but she reported no significant benefit on May 15, 2002. She requested to have her knee scoped and cleaned up. Dr. Christian told her that this might not make a tremendous difference, but noted that she wished to proceed. Tr. 360, 410.

Plaintiff underwent arthroscopic right knee surgery on May 22, 2002, for debridement of osteoarthritic changes. Tr. 163-164. On July 10, 2002, Plaintiff had no effusion and good range of motion. She complained of a little bit of medial joint tenderness. Plaintiff was released to be seen on an as-needed basis. Tr. 357.

Plaintiff was treated in a hospital emergency room for left knee pain on January 2, 2003. Tr. 275-280. Examination of her knee was normal except for complaints of tenderness and an antalgic gait. X-rays were also normal. Tr. 280. On January 5, 2003, she sought treatment at a hospital emergency room after hitting her knee on a box. Right knee examination was described as benign.

Tr. 248-252. An MRI of Plaintiff's right knee on January 28, 2003, revealed mild osteoarthritic changes in the medial compartment. Tr. 374.

On February 4, 2003, Dr. Christian's examination of Plaintiff's right knee revealed good range of motion and no varus deformity. He recommended cortisone injection, weight loss, and exercise to alleviate symptoms. Tr. 356. Dr. Christian injected Plaintiff right knee with cortisone on February 11, 2003. Tr. 355. On July 1, 2003, Plaintiff complained to Dr. Christian of left knee pain which had bothered her for the last couple of months. Examination revealed no redness, increased warmth, instability, or neurological changes. She had only a "mild" varus alignment. Tr. 408. X-rays showed mild degenerative changes and Dr. Christian recommended physical therapy. Tr. 408-409. On August 14, 2003, Dr. Christian found no effusion and noted that Plaintiff had pretty good range of motion. Plaintiff told Dr. Christian that she wanted arthroscopic surgery. On August 14, 2003, Plaintiff informed Dr. Christian that she had experienced no problems with her right knee since that knee was scoped and debrided. Tr. 407.

On September 17, 2003, Dr. Christian performed left knee arthroscopy with debridement of Plaintiff's medial joint. Following surgery, Plaintiff stated that she was still uncomfortable, although examination revealed no effusion and no real discomfort. Dr. Christian talked to plaintiff about her weight and exercise. Tr. 403. Plaintiff again complained of left knee problems on December 9, 2003. Examination, however, revealed good flexion and extension, her knee was stable; and there was no effusion, bruising, redness, or warmth. She complained of only mild pain with internal rotation. Dr. Christian prescribed a knee brace. Tr. 402. On January 20, 2004, it was recommended that Plaintiff's knee brace, which was rubbing her, be adjusted and padded for support and comfort. She

8

was to notify the office if she continued to have pain and was told to return on an as-needed basis. Tr. 401. There is no indication of further treatment with Dr. Christian after that time.

The ALJ's determination that Plaintiff's other impairments (including diabetes mellitus, a history of abdominal abscess, and depression) were non-severe is supported by substantial evidence. It is the claimant's burden to show that he or she had a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 145 n. 5 (1987). A non-severe impairment is defined as one that does not "significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Additionally, although Plaintiff suffered, at times, from other impairments, including chest pain, these impairments were temporary.

Plaintiff's diabetes mellitus was primarily treated by Dr. Samuel Burnett, an internist. Plaintiff was instructed to exercise and control her weight to improve her blood sugar control (Tr. 235-236, 239-241), but medical notes indicate that she did not control her weight or follow her diabetic diet in terms of the types of food she ate or the timing of her meals (Tr. 230, 235-236, 239-240). Despite her non-compliance, there is no indication that Plaintiff suffered any diabetic complications. Dr. Burnett's physical examinations generally did not reveal diabetic complications. See Tr. 227, 230, 233, 235-237, 239-241, 615, 618. An ophthalmologist noted that Plaintiff had no retinopathy on April 1, 2002. Tr. 162.

Plaintiff was prescribed an insulin pump in October 2002. On January 2, 2003, Dr. Burnett stated that Plaintiff's blood sugars were better controlled. Tr. 227, 229. On April 16, 2003, an examining physician stated that Plaintiff "presently has good sugar control with her insulin pump." Tr. 523. On May 20, 2003, Plaintiff reported to Dr. Burnett that her blood sugars were better with

the insulin pump. Tr. 620. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1165-6 (4th Cir. 1986).

On August 3, 2003, Plaintiff was treated in a hospital emergency room for complaints that her blood sugars were over 300 and her ketones were over 2000. Tr. 467-473. It was noted, however, that Plaintiff did not appear to be acutely or chronically ill. Physical examination was normal. Her blood sugar was noted to be elevated at 220, and there were no signs of ketoacidosis. Plaintiff was given medication and released. Tr. 467-473.

On September 3, 2003, Dr. Burnett reported that Plaintiff was on an insulin pump which had greatly improved her sugar control and that she had no low sugars in the recent past. Tr. 618. He noted that Plaintiff's blood sugars were well-controlled on December 16, 2003. Tr. 615.

Plaintiff was described as depressed or anxious due to situational stress in July 2001, August 2001, and November 2002. Tr. 217, 239-240. She was prescribed psychotropic medications. Tr. 227-228, 230, 233, 235-237, and 239-240. Dr. Warner's mental status examination in January 2002, however, revealed that Plaintiff was alert and fully oriented, her speech was clear, her language was intact, and her memory was good. Tr. 222. On March 26, 2003, Dr. Warner noted that Plaintiff was alert and fully oriented; she had normal language and attention; she had no extinction, neglect, or apraxia; she was able to perform serial seven calculations; and she had normal memory, visuospatial testing, and fund of knowledge. Tr. 631.

On May 20, 2003, Dr. Burnett noted that Plaintiff was no longer taking medications for depression. Tr. 610. On June 25, 2003, Dr. Warner wrote that Plaintiff's mental status examination, including her language, attention, mathematical calculations, and memory, were entirely normal. Tr. 630. On September 3, 2003, Dr. Burnett noted that Plaintiff was not taking medication for depression

and that the stress in her life had improved. Tr. 618. Plaintiff reported additional stress in September 15, 2003, at which time she was prescribed Paxil. Tr. 617. On December 16, 2003, Dr. Burnett reported that Plaintiff had responded to the medication. Tr. 615. Plaintiff reported family problems on November 4, 2004, at which time it was noted that Plaintiff needed to restart Paxil. Tr. 672.

Although Plaintiff received psychotropic medication from Dr. Burnett for her mental complaints, he never referred her for mental health treatment. Dr. Burnett's records indicate that medications were effective in ameliorating Plaintiff's symptoms and that her mental health issues were due to situational stress. Additionally, Dr. Warner's mental health examinations were normal. Plaintiff has shown no related functional loss from these impairments. Additionally, the ALJ's conclusion that Plaintiff's mental health impairments were non-severe is supported by the opinions of the State agency psychologist, as discussed below.

Plaintiff began experiencing abdominal pain in February 2003. Tr. 523, 622-623. After examination and testing, symptomatic biliary dyskinesia was diagnosed, and removal of her gallbladder was proposed. Tr. 523, 525, and 535-36. After her gallbladder was removed on April 28, 2003 (Tr. 500-501), Dr. Burnett reported (on May 20, 2003), that Plaintiff did well and termed the surgery successful (Tr. 620).

Plaintiff developed a bunion on her foot, which was removed on September 21, 2001. Tr. 337-338, 371-372, 375. The surgical area became infected, and the surgical pin was removed in a hospital emergency room on October 13, 2001. Plaintiff was given antibiotics and the infection resolved without complication. Tr. 335, 367. She was allowed to return to wearing regular shoes in January 2002. Tr. 364.

11

On June 6, 2004, Plaintiff complained of pain in her right elbow that radiated to her shoulder. She was referred to social services for aid in obtaining medications. Tr. 659-664. Plaintiff was treated in a hospital emergency room on June 30, 2004, for complaints of right forearm pain and swelling of her fingers. Tendinitis and carpal tunnel syndrome were listed as diagnoses. Tr. 640-646.

In July 2002 (prior to the insulin pump), Plaintiff developed a small abdominal wall abscess and cellulitis in the area where she injected insulin. Tr. 234, 346. When she did not improve with outpatient treatment (Tr. 233-234), she was hospitalized from August 4 to August 7, 2002, for drainage of the abscess and antibiotic treatment. Tr. 168-84, 346. Her cellulitis was resolved by August 12, 2002, and the abscess was drained and packed on an outpatient basis on August 14, 2002. Tr. 232, 348-349. The abscess occurred again on September 5, 2002. Tr. 347, 349. She required antibiotics until September 25, 2002 (Tr. 230-231, 319-324, 347, 349), when the abscess resolved (Tr. 230).

Plaintiff also suffered from chest pain, but fails to show that this impairment was a "severe" impairment. On March 19, 2003, Plaintiff underwent cardiac catheterization to evaluate what was thought to be unstable angina of two month's duration. See Tr. 459, 510, 538-613. The study revealed normal coronary arteries, normal left ventricular filling pressures, and normal left ventricular systolic function and wall motion. Tr. 459. Plaintiff was examined in a hospital emergency room on August 8, 2003, complaining of chest pain. Tr. 454-458. An EKG and chest x-ray were normal. Tr. 458, 462-464. On September 3, 2003, Dr. Burnett reported that a stress Cardiolite test failed to show evidence of remarkable ischemia and that Plaintiff experienced no further chest pain. Tr. 618.

The ALJ's determination that Plaintiff had the physical residual functional capacity ("RFC") to perform at least a limited range of medium work is also supported by the findings of State agency medical consultants. See 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."). On August 16, 2002, Dr. Frank K. Ferrell reviewed Plaintiff's records and concluded that Plaintiff's musculoskeletal impairments were severe, but that her diabetes mellitus was not a severe impairment. Tr. 186. He completed a physical functional capacities form in which he opined that Plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; sit (with normal breaks) for a total of six hours in an eight-hours workday; could push and/or pull without limits; could frequently balance; could occasionally climb, stoop, kneel, crouch, and crawl; and had no manipulative, visual, communicative, or environmental limitations. Tr. 201-208.

Dr. Xanthia P. Harkness, a psychologist, reviewed Plaintiff's medical records on August 21, 2002 and concluded that Plaintiff did not have a severe mental impairment. She noted that Plaintiff had a history of treatment for situational depression and had normal mental status examination findings from treating physicians. Dr. Harkness concluded that Plaintiff's depressive symptoms imposed only minimal limitations on her functioning and ability to perform basic work functions. Tr. 186-200.

On March 27, 2003, Dr. William O. Crosby reviewed Plaintiff's medical records and completed a physical capacities evaluation form. He found that Plaintiff's musculoskeletal conditions

were severe impairments, but her diabetes mellitus and abdominal abscess were not severe impairments. Dr. Crosby opined that Plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could frequently balance; could occasionally climb, stoop, kneel, crouch, and crawl; and had no manipulative, visual, communicative, or environmental limitations. Tr. 393-400, 418.

Dr. Helen Marie Clark, a psychologist, reviewed Plaintiff's records and completed a psychiatric review technique form on April 2, 2003. She noted that Plaintiff's mental status was intact and opined that Plaintiff did not have a severe mental impairment. Tr. 379-392, 418.

B.      Treating Physician

Plaintiff alleges that the ALJ erred in not properly evaluating the opinion of her treating physician, Dr. Burnett, that she is totally and permanently disabled. The Commissioner contends that, contrary to Plaintiff's argument, Dr. Burnett did not conclude that Plaintiff was "totally disabled" or "unable to perform any substantial, gainful activity", but only stated that Plaintiff had symptoms that affected her ability to work. Additionally, the Commissioner contends that even if this is interpreted as an opinion of disability, the ALJ properly discounted it because the opinion is not well supported by Dr. Burnett's treatment records, it is contradicted by the findings of treating neurologist Dr. Warner, and it is contradicted by the opinions of the State agency physicians (Dr. Ferrell and Dr. Crosby) and psychologists (Dr. Harkness and Dr. Clark).

Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir.

1988), and Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986).  In those cases, the court emphasized the importance of giving great weight to the findings of the plaintiff's treating physician. See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983).  The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled.  DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2).  The Court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.

On November 3, 2004, Dr. Burnett completed a form which appears to have been generated by Plaintiff's attorney.  The first question posed was "Does this patient suffer from severe pain, fatigue and depression as a result of her medical condition?" Dr. Burnett circled "Yes."  The next question was "If yes, does the pain, fatigue and depression affect her ability to sustain any gainful employment?" Dr. Burnett circled "Yes."

The ALJ's decision to discount this alleged opinion of disability is supported by substantial evidence.  First, as noted by the ALJ, Dr. Burnett did not state how or to what degree Plaintiff had limitations, just that she had work-related limitations.  See Tr. 16.  Thus, his opinion is not

15

necessarily inconsistent with the ALJ's finding that Plaintiff had severe impairments which prevented her from doing more than medium work.

Even assuming that this is an opinion of disability, an ALJ is not bound by a conclusory opinion of disability or entitlement to benefits, even when rendered by a treating physician, since the issue of disability is the ultimate issue in a Social Security case and that issue is reserved for the Commissioner. See 20 C.F.R. § 404.1527(e)(1); Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027 (10th Cir. 1994); see also Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)(statements that a claimant could not be gainfully employed are not medical opinions, but opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner); King v. Heckler, 742 F.2d 968 (6th Cir. 1984); Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir.1984).

Further, an opinion of disability by Dr. Burnett is not supported by his own office notes which revealed generally normal physical examination findings. Tr. 227, 230, 233, 235-237, 239-241, 615, and 618. He noted that Plaintiff's blood sugars were better controlled with an insulin pump (Tr. 227, 615, 618) and her mental symptoms were controlled with medications. Tr. 615. There is no indication that Dr. Burnett restricted any of Plaintiff's activities. An opinion of disability is also not supported by the findings of treating physicians Dr. Warner and Dr. Christian, who did not put any permanent restrictions on Plaintiff's ability to perform work. Further, Dr. Warner's mental status and neurological examinations of Plaintiff were normal. Tr. 217-223, 630-631. Finally, an opinion of disability is not supported by the opinions of the state agency physicians and psychologists who specifically described Plaintiff's functional limitations and capacities, as described above.

C.     Credibility/Pain

Plaintiff alleges that the ALJ improperly discounted her complaints of severe and disabling pain. Specifically, she claims that the ALJ erred by not expressly considering the threshold question of whether Plaintiff demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain that she alleges. The Commissioner contends that the ALJ's findings are supported by substantial evidence, the ALJ properly found that Plaintiff's testimony was not credible for a number of specific reasons, and the credibility analysis substantially conforms to applicable law.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

Contrary to Plaintiff's argument, the ALJ did find at step one that "Claimant's [impairments][1] can reasonably be expected to produce some of the symptoms alleged by the claimant." Tr. 18. The ALJ found that Plaintiff's impairments were not generally credible because of the lack of objective medical signs and clinical findings; evidence that her symptoms improved with medication and treatment; lack of documented evidence of significant limitations in her ability to sit, stand, or walk; and a lack of reports from any treating source that her impairments were actually debilitating to the point of precluding all substantial gainful activity. Id.  The ALJ specifically discussed Plaintiff's subjective complaints and stated that was considering all the evidence in evaluating her credibility. Tr. 17.

The ALJ's determination concerning Plaintiff's credibility and pain is supported by substantial evidence including the medical evidence, as discussed above. Although Plaintiff testified as to severe back pain, her subjective complaints were not supported by the medical findings. See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005)(ALJ could reject claimant's testimony because it was inconsistent with objective medical evidence). Plaintiff testified to restrictions on her activities of daily living because of her impairments, but that testimony is unsupported by the medical evidence. See Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991)(Claimant's allegation that he had to recline or lie down several times a day was discounted because no physician suggested that claimant's condition required such reclining).

D.     Past Relevant Work

---

[1] The lack of the word "impairments" appears to be merely a typographical error. The ALJ clearly found that Plaintiff had severe impairments. See Tr. 15, 19 (finding number 3).

18

Plaintiff also alleges that the ALJ erred in not obtaining testimony from a VE because such testimony is generally required where a claimant exhibits significant non-exertional impairments. The Commissioner contends that the claimant has the burden of establishing that she is unable to perform her past relevant work and that the ALJ is not required to use a VE at step four of the sequential evaluation process.

At the fourth step of the disability inquiry,[2] a claimant will be found "not disabled" if the claimant is capable of performing his or her past relevant work either as he or she performed it in the past or as it is generally required by employers in the national economy. SSR 82-61. The claimant bears the burden of establishing that he or she is incapable of performing his or her past relevant work. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).

Here, the ALJ determined that Plaintiff retained the residual functional capacity to perform a wide range of medium work. He then determined that Plaintiff's jobs as a doffer, cashier/stocker, and machine operator, as she performed them, were performed at the light or medium exertional levels. See Tr. 19, 113-119. The ALJ thus properly determined that Plaintiff could perform her past relevant work. The ALJ was not required to go to step five and determine that Plaintiff could perform other work using the medical-vocational guidelines or obtaining the testimony of a VE because the ALJ found that Plaintiff could perform her past relevant work. Pass v. Chater, 65 F.3d at 1203; Smith

---

[2] In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id.

19

v. Bowen, 837 F.2d 635 (4th Cir. 1987)(VE enters the sequential analysis for determining disability after a claimant is found unable to do his past relevant work).

## CONCLUSION

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, supra. It is, therefore,

RECOMMENDED that the Commissioner's decision be affirmed.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

February 22, 2007
Columbia, South Carolina

20